UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LEON E. BARD, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 8-193-P-S |
| | ) |
| BRENDEN SMITH, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**RECOMMENDED DECISION AND
ORDER ON MOTION FOR SANCTIONS**

Leon Bard brought this action proceeding pro se as a 'private attorney general.' Bard claims that the defendants destroyed his business and personal assets. He charges the defendant with violating his civil rights, perpetrating fraud, and racketeering. Pending before the court are the following motions: (1) Motion for Sanctions filed by Brenden Smith, with a response date of July 14, 2008; (2) Motion to Dismiss complaint filed by Brenden Smith with a response date of July 14, 2008; (3) Motion to Dismiss by Dan Daggett with a response date of July 18, 2008; and (4) Motion to Dismiss by Robert Ireton-Hewitt with a response date of July 21, 2008. The response dates for all of these motions have come and gone, and in spite of Bard's numerous filings in this case, he has filed no response to these four substantive motions. I now recommend the court grant the three motions to dismiss, deny the motion for sanctions and dismiss this matter in its entirety, as the only remaining allegations would be unspecified allegations against John and Jane Doe that would fail for the same reasons as those discussed below.

**Procedural Background and Complaint Allegations**

Leon Bard, Jr. filed this complaint on June 11, 2008, claiming that his action arose under 42 U.S.C. § 1983 and was also brought pursuant to 18 U.S.C. § 1961,et seq., as a RICO (Racketeer Influenced and Corrupt Organizations Act) action. He sued Brenden Smith, Robert Ireton-Hewitt, John and Jane Doe, and Dan Daggett. According to the complaint the case arose from the defendants' activities in connection with loans that Bard had through Bowdoinham Federal Credit Union and Down East Credit Union. Bard generally alleges that the defendants conspired to defraud him in connection with his payments on these notes held by the credit unions. He also claims his due process rights were violated in state court proceedings. His "complaint" consists of over a dozen pages of a mishmash of case citations and quotations from cases on various legal issues. It is accompanied by a two-page affidavit that provides a barebones factual account of the background information.

Bard joined the Bowdoinham Federal Credit Union in 1996 (Bard Aff. ¶ 1.) In May 2004 he obtained a mortgage loan for $ 128,000.00 and an equipment loan for $ 99,000.00 from the credit union. (Id. ¶¶ 2-3.) There was a cross-collateralization of the loans. (Id. ¶ 4.) In 2005 Robert Ireton-Hewitt was hired, presumably by the credit union, and he and Dan Daggett called and spoke with Bard. (Id. ¶¶ 5-6.) Thereafter, Bard received a right-to-cure letter on the equipment loan. (Id. ¶ 7.) According to Bard the credit union circumvented regulations in granting the equipment loan because it was twice the limit, they did not provide copies of the loan documents to him, and he was asked for additional collateral to approve the loan. Bard goes on to allege in unnumbered paragraphs that he was deceived into signing the cross-collateral agreement

2

and he received a fraudulent right-to-cure letter.  He further alleges he was harassed by collections staff and coercive tactics were used to get him to forfeit the equipment.  Ultimately, Bard insists, the defendants submitted false information in court documents and engaged in other conduct to worsen Bard's financial status.  Bard alleges the Sheriff's Department was used by the defendants to coerce Bard into further damaging loans.  Ultimately the defendants hired a private investigator to stalk Bard and trespass on his property, apparently to view potential collateral.  Bard also alleges the defendants froze his accounts, preventing him from making payments on the loans.

   Bard paid the filing fee for this action, summonses were issued, and the three named defendants were duly served.  On June 19, 2008, Bard filed what he called a Motion to Stay and a Motion to Amend to Add a Party (Doc. No. 6).  The gist of this motion related to action by the Sagadahoc Sheriff's Department in connection with their anticipated execution of a Writ of Possession.  Bard requested that the Sheriff and the County be added as parties to this complaint and that they be enjoined from enforcing the Writ of Possession.  I denied Bard's request and explained that if he was seeking a temporary restraining order from this court he had to file the appropriate documents and provide notice to the parties.  Additionally, I explained that if Bard wanted to amend his complaint to add new parties he had to file an amended complaint that explained who he was suing in one complete document.  On June 25 he filed a second motion to amend, still unaccompanied by an amended complaint naming **all** parties being sued, and a separate motion for a temporary restraining order.  On June 26, 2008, Chief Judge Singal denied the motion for a temporary restraining order and on July 16, 2008,  I denied the

3

two pending motions to amend (Doc. Nos,. 6 & 10.)   In the interim these motions to dismiss were filed by the defendants and Bard has never responded to them.

**Brenden Smith's Motion for Sanctions**

Defendant Brenden Smith explains in his motion for sanctions that he has represented Down East Credit Union in a number of cases against Bard and that Bard is about to lose his house to foreclosure.  In Smith's view Bard's pleadings are meant to harass him and to delay enforcement of the foreclosure judgment.  Smith also complains about the conclusory nature of Bard's pleadings and the vexatious nature of this lawsuit.  While Bard's pleadings are hardly a model of clarity, I do not think Civil Rule of Procedure 11(b) sanctions are appropriate at this point in the case of a pro se litigant.  First and foremost, a pro se litigant is not subject to rigid pleading standards and his submissions must be reviewed liberally.  See Clarke v. Blais, 473 F. Supp. 2d 124, 128 (D. Me. 2007) (citing Hughes v. Rowe, 440 U.S. 5, 9-10 (1980), and noting that an unrepresented plaintiff's complaint is held to "less stringent standards" than a pleading drafted by a lawyer).  To date Bard has done nothing in the context of this lawsuit to warrant the imposition of sanctions.  If he were to engage in repeated unauthorized filings in this court, the issue of sanctions might be revisited.  But simply because Bard turned to the federal court in the hope of obtaining some relief from what he apparently perceives as unlawful conduct does not warrant the imposition of Rule 11 sanctions.

**Recommendation that the Federal Claims be Dismissed for Failure to State a Claim and that the Court Decline to Exercise Supplemental Jurisdiction to the Extent that Bard Intended to Plead a Fraud/Conspiracy Count**

I must accept all factual allegations in Bard's complaint as true and take them in the light most favorable to him. Erickson v. Pardus, ---U.S. ----, ----, 127 S.Ct. 2197,

4

2200 (June 4, 2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002). To satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, Bard's complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant[s] fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (citing Fed.R.Civ.P. 8). See also Bell Atl. Corp. v. Twombly, --- U.S. ----, ----, 127 S.Ct. 1955, 1964 (May 21, 2007) (citations omitted); Erickson, 127 S.Ct. at 2200; Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Bell Atl. Corp., 127 S.Ct. at 1965. Bard must plead enough facts to state a "plausible" basis for the claim. Id.[1]

With regards to any claims under 42 U.S.C. § 1983 against these defendants, Bard has utterly failed to plead the requisite "state action" which is a non-fungible prerequisite to bringing any § 1983 claim. As the Court explained in Connolly v. H.D. Goodall Hospital, Inc.:

> "Title 42 U.S.C. § 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ...." Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982) (internal punctuation omitted). To maintain a section 1983 claim, a plaintiff must show (1) the existence of a federal constitutional or statutory right and (2) deprivation of that right by someone acting under color of state law. Rockwell v. Cape Cod Hosp., 26 F.3d 254, 256 (1st Cir.1994); Watterson v. Page, 987 F.2d 1, 7 (1st

---

[1] This court is not bound by a pleading's "legal conclusions," or its "unsupported conclusions," or its "unwarranted inferences," or its "unwarranted deductions," its "footless conclusions of law," and its "sweeping legal conclusions cast in the form of factual allegations." 5B C. Wright & A. Miller, Federal Practice and Procedure § 1357 (footnotes with cited sources omitted). "[T]he court will not accept conclusory allegations concerning the legal effect of the events the plaintiff has set out if these allegations do not reasonably follow from the pleader's description of what happened, or if these allegations are contradicted by the description itself." Id. (footnote omitted).

5

> Cir.1993); see also Rhode Island Ass'n of Realtors, Inc. v. Whitehouse, 199 F.3d 26, 37 (1st Cir.1999) ("state action is an indispensable ingredient of a suit which ... raises a section 1983 claim predicated on an abridgement of First Amendment rights."); Barrios-Velazquez v. Asociacion de Empleados, 84 F.3d 487, 495 (1st Cir.1996) (holding that a claim under section 1983 requires state action).

353 F.Supp.2d 84, 88 (D. Me. 2005), aff'd, 427 F.3d 127, 127 -28 (1st Cir. 2005). These defendants are not employed by the State and from the allegations of Bard's complaint it is impossible to divine any state compulsion, a nexus or joint action, or a manner in which these defendants were performing a public function within the meaning of § 1983 jurisprudence. See id. at 89-90.

I am not overlooking the fact that Bard attempted to amend his complaint on June 19, 2008, (Doc. No. 6), asking that the court restrain the Sagadahoc Sheriff's Department and its deputies from coming on his property. I entered an order that indicated with respect to Bard's efforts to amend: "If plaintiff wants to amend his complaint once as a matter of right he is allowed to do so under the rules; however, to add a party he must submit a proposed amended complaint naming all proposed defendants and explaining his entire case as against each named defendant. That amended complaint would then become the operative pleading." (See Doc. No. 7.) On June 25, 2008, Bard filed a motion to amend seeking to name the Sagadahoc Sheriff's Office, Sheriff Westrum, and unspecified deputies as defendants, envisioning claims stemming from their "past and future actions against Plaintiff." (Mot. Amend at 1.) He asserts that these defendants have made several threatening phone calls and have trespassed on his property. (Id.) He cites to calls on June 17 and 23, 2008. (Id.) I denied the motion to amend indicating: "Plaintiff has not submitted a proposed amended complaint with either motion [to amend] and neither motion presents a colorable claim against any additional defendants or the

6

defendants currently named as defendants." (Doc. No. 19.) Bard's proposed amendment may have attempted to join state actors but it did nothing to advance a claim that the non-state actors in this action were acting under state compulsion, had a nexus with or undertook joint action with state actors, or were performing a public function. The conceived amendment, rather, attempted to use the claims against the non-public defendants as a springboard to pursue a remedy against the proposed sheriff department defendants for actions taken since the filing of the complaint.[2]

With regards to Bard's RICO claims the District Court also addressed the pleading burden for such claims in Connolly:

> For a RICO claim pursuant to 18 U.S.C. § 1962(c) to survive a motion to dismiss, the Complaint needs to allege "(1) conduct, (2) of an enterprise (3) through a pattern (4) of racketeering activity." Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir.1996). Plaintiff's Complaint fails to identify any enterprise or pattern of racketeering activity and fails to allege that the "defendants' scheme amounted to, or posed a threat of, continuing criminal activity." Miranda v. Ponce Fed. Bank, 948 F.2d 41, 46 (1st Cir.1991). The absence of these allegations is fatal under RICO.

353 F.Supp.2d at 90 (footnote omitted). The First Circuit affirmed remarking, "the facts alleged in support of Connolly's RICO claim could not conceivably lead to a determination that defendants functioned as a RICO enterprise and engaged in a pattern of racketeering activity. 427 F.3d at 128 (citing 18 U.S.C. § 1962(d) and Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir.1996)). The same holds true with regards to

---

[2] The only relevant allegation in Bard's complaint apropos state action is that the Sheriff's Department was used by the defendants to coerce Bard into further damaging loans. First I note that the court ought to "ignore conclusory allegations, improbable inferences, and unsupported speculation." Fiacco v. Sigma Alpha Epsilon Fraternity, 528 F.3d 94, 98 -99 (1st Cir. 2008) (quotations omitted)(quoting Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir.2000) citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990)).
Second, in neither of his pleadings relating to the liability of the sheriff department and its employees – when Bard had the opportunity to specifically allege the aggrieved-about conduct of the sheriff department personnel -- does Bard refer to sheriff department activity with regards to loan coercion.

Bard's RICO claim. There is no "plausible" basis in the allegations of his complaint or affidavit for a RICO claim. See Bell Atl. Corp., 127 S.Ct. at 1965.

With regards to Bard's allegations of fraud, it is unclear from the complaint whether or not he intended to plead a pendant state law claim for fraud/conspiracy. Assuming he did, it is clear to me that this is an instance in which it is appropriate to dismiss the supplemental state law claim without prejudice. See 28 U.S.C. 1367(c); Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir.1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit ... will trigger the dismissal without prejudice of any supplemental state-law claims."); accord Gonzalez-De-Blasini v. Family Dept., 377 F.3d 81, 89 (1st Cir.2004).

## Conclusion

I now deny Smith's motion for sanctions. For the reasons stated above, I recommend that the court grant the three motions to dismiss and dismiss Bard's 42 U.S.C. § 1983 and Rico counts for failure to state a claim and decline to exercise pendant jurisdiction over any state law fraud/conspiracy claim.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed without ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

July 23, 2008                         /s/ Margaret J. Kravchuk
                                      U.S. Magistrate Judge

8